UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
CHESTER PARK VIEW, LLC, and
LAZAR OSTREICHER,

                                        Plaintiffs,

          - against -

BEN SCHLESINGER, MARVIN
LIPSCHITZ, a/k/a MARVIN LIPSHUTZ,
MORDECHAI BECK, and MEIR BERGER,

                                        Defendants.
---------------------------------------------------------------x

**OPINION & ORDER**

No. 23-CV-5432 (CS)

<u>Appearances</u>:

Matthew Sheppe
Reiss Sheppe LLP
New York, New York
*Counsel for Plaintiffs*

Michael K. Burke
Hodges Walsh & Burke, LLP
White Plains, New York

John W. Mitchell
Law Offices of John W. Mitchell
Bedford, New York
*Counsel for Defendants Mordechai Beck and Meir Berger*

Jeremy Gutman
New York, New York
*Counsel for Defendants Ben Schlesinger and Marvin Lipschitz*

<u>Seibel, J.</u>

        Before the Court are the motions of Defendants Mordechai Beck and Meir Berger, (ECF

Nos. 35, 41), and Defendants Ben Schlesinger and Marvin Lipschitz, (ECF No. 39), to dismiss

the First Amended Complaint, (ECF No. 32 ("FAC")), pursuant to Federal Rule of Civil

Procedure ("FRCP") 12(b)(6), and their respective motions for sanctions, (ECF Nos. 50, 54).

I.    **BACKGROUND**

For the purposes of these motions, the Court accepts as true the facts, but not the conclusions, alleged by Plaintiffs in the FAC.

A.    **Facts**

This case arises from a dispute regarding the ownership and use of real property located at 38 College Road, Monsey, New York (the "Property") and a non-profit religious corporation – Anshei Sfard Monsey ("ASD") – that has no congregation and no purpose other than to manage and control the Property, at which it has been purportedly located for more than 20 years.  (FAC ¶¶ 1, 4, 17.)

On October 23, 1995, a for-profit corporation named Anshei Sfard D'Monsey, Inc. ("ASD Inc.") – not to be confused with the non-profit religious corporation ASD – was incorporated under New York's Business Corporation Law.  (*Id.* ¶ 15.)  ASD Inc. purchased the Property on November 2, 1995.  (*Id.* ¶ 16.)  That same day, ASD incorporated as a not-for-profit religious corporation under Article 10 of New York State's Religious Corporations Law, (*id.* ¶ 17), and its certificate of incorporation lists five initial trustees:  Joshua Berger, Sam Halperin, Aaron Halpert, Joshua Friedman, and Defendant Ben Schlesinger, (*id.* ¶ 18).  On December 23, 1996, ASD Inc. conveyed the Property to ASD in a deed executed by Schlesinger as ASD Inc.'s President.  (*Id.* ¶ 19.)  In that transaction, ASD granted a mortgage on the Property and a promissory note to ASD Inc. and Schlesinger in the amount of $92,000 at a 10% annual interest rate (the "Note").  (*Id.* ¶ 20.)   ASD never made interest payments on the Note, and by 2022 the amount owed on it had ballooned to about $1.1 million.  (*Id.* ¶ 43.)

Between January 1998 and January 1, 2002, Joshua Berger, Sam Halperin, Aaron Halpert, and Joshua Friedman stopped serving as trustees of ASD, (*id.* ¶¶ 21-24), and the sole

remaining ASD trustees through December 23, 2021 were Schlesinger and Defendant Marvin Lipschitz, (*id.* ¶ 24).[1]

Sometime in early 2000, Defendant Mordechai Beck began to bus students up from Brooklyn, New York to the Property to teach them in a rural setting, and paid ASD for the use of the Property.  (*Id.* ¶ 25.)  While Beck used the Property for teaching, he never had any connection or affiliation with ASD.  (*Id.* ¶ 26.)  Over the past twenty years Schlesinger and Lipschitz have used the Property for informal prayer sessions that also were not affiliated with or connected to ASD.  (*Id.* ¶ 27.)

In or around September 2021, Schlesinger told Ben Gross – who lived near the Property and had informally prayed there over the years – that he was interested in selling the Note and relinquishing control of ASD.  (*Id.* ¶ 28.)  Gross asked Beck if he was interested in purchasing Schlesinger's stake in the Note and taking over the Property, (*id.* ¶ 29), and Beck said he was not, (*id.* ¶ 30).  Gross then informed Plaintiff Lazar Ostreicher that Schlesinger and Lipschitz wanted to sell the Note and transfer control over ASD.  (*Id.* ¶ 31.)  Because he had been searching for property to house his roughly 100-person congregation, (*id.* ¶ 32), Ostreicher began discussing the purchase with Schlesinger and Lipschitz, (*id.* ¶ 31).  He also discussed his interest with Beck, who informed Ostreicher that he was not interested in buying the Note or assuming control of ASD.  (*Id.* ¶ 33.)

On December 10, 2021, Schlesinger emailed Ostreicher documents confirming that only Schlesinger and Lipschitz remained as ASD's trustees.  (*Id.* ¶ 37.)  On December 23, 2021, as part of the proposed transaction, Schlesinger and Lipschitz, as the trustees of ASD, held a special meeting at which they elected four new trustees:  Ostreicher, Ben Gross, Chaim Stern, and Malka

---

[1] The FAC does not specify when Lipschitz first became a trustee of ASD.

Ostreicher.  (*Id.* ¶ 35.)  That same day, Schlesinger and Lipschitz resigned as trustees of ASD. (*Id.* ¶ 36; *see id.* ¶¶ 71-72.)  Over the next several months, Schlesinger emailed Ostreicher and others "many times" regarding the transaction and documents relating to it.  (*Id.* ¶ 38.)

On May 5, 2022, for the price of $525,000, Schlesinger and Lipschitz assigned the Note to Plaintiff Chester Park View LLC ("CPV"), (*id.* ¶ 39-41, 43), an entity apparently created by Ostreicher for that purpose.  Concurrently, an assignment of the mortgage on the Property was executed by CPV, ASD, Inc., Schlesinger, and Lipschitz.  (*Id.* ¶ 39.)  Lipschitz participated by Zoom, as he was in Florida at the time, and signed the necessary documents there.  (*Id.* ¶ 40.) Ostreicher apparently participated by Zoom from Israel.  (*Id.* ¶ 117.b.)  The contract included the following representations by Schlesinger and Lipschitz:  that (1) they were the sole shareholders, officers, and directors of ASD Inc.; (2) they were the sole trustees of ASD; (3) ASD Inc. was in good standing in its state of incorporation; (4) ASD Inc. fully authorized the execution of the contract, and no other authorization was needed to make it binding on ASD Inc.; (5) Schlesinger and Lipschitz had the authority to bind ASD Inc.; and (6) no other pending agreements or negotiations involving ASD Inc. would render the contract or any part of it void, voidable, or unenforceable.  (*Id.* ¶ 42.)  In an email to Ostreicher's transactional lawyer on May 13, 2022, Schlesinger's and Lipschitz's lawyer confirmed their participation in the transaction to sell the Note.  (*Id.* ¶ 44.)

At an unspecified time shortly after the May 5, 2022 transaction, while in Israel, Ostreicher learned that Beck now claimed an interest in the Property.  (*Id.* ¶ 46.)  On or around May 9, 2022, Schlesinger told Gross that he would sell the Note to whichever of Ostreicher or Beck would pay the most.  (*Id.* ¶¶ 51-52.)  Ostreicher sought to have the matter resolved through a rabbinical court and attempted to determine whether Beck would participate.  (*Id.* ¶ 46.)  At

Beck's behest, a Rabbi Blum, from the rabbinical court Ostreicher wanted to use, told Ostreicher by email on May 11, 2022 that Beck agreed to resolve the matter in rabbinical court and that Ostreicher should therefore fire his civil lawyer.  (*Id.* ¶ 47.)  Blum, however, knew that Beck had no intention of participating in a rabbinical court proceeding and that Beck was instead preparing to file a lawsuit in New York state court.  (*Id.* ¶¶ 48-49.)  On May 13, 2022, Beck filed that state lawsuit and sought a temporary restraining order ("TRO").  (*Id.* ¶ 50.)[2]

Schlesinger and Beck refused to resolve the matter in rabbinical court, but a rabbinical court held an appearance concerning the dispute on March 14, 2023, at which Beck's "assistant," Defendant Meir Berger, told Ostreicher that Beck had paid Schlesinger and Lipschitz more than Ostreicher had, which was why Beck asserted a claim to the Property.  (*Id.* ¶¶ 53-55.)  Berger then told another rabbi on June 14, 2023 that Ostreicher rightfully owned the Property.  (*Id.* ¶ 56.)

Plaintiffs allege that in order to bolster Beck's claim to the Property, Defendants committed fraudulent acts and created false documents.  (*Id.* ¶¶ 57-58.)  First, Beck and Berger created fraudulent minutes for an ASD meeting purportedly occurring on January 1, 2003.  (*Id.* ¶ 59; ECF No. 32-2.)  These meeting minutes list Joshua Sternhell, Larry Lipschitz, Defendant Beck, Flora Beck, Elky Friedman, and Rachel Klein as ASD trustees, but they were never elected or appointed as trustees of ASD, and the valid trustees – Schlesinger and Lipschitz, whose names also appear in the meeting minutes – did not attend any such meeting.  (FAC ¶¶ 60-62; *see* ECF No. 32-2.)  According to Plaintiffs, these minutes had never been previously filed, and they contain no details about the meeting's compliance with the New York Religious

---

[2] The lawsuit, brought by ASD, names ASD Inc., Ben Schlesinger, Marvin Lipschitz, Lazar Ostreicher, Malka Ostreicher, Chaim Stern, Ben Gross, and CPV as defendants.  (*See* Index No. 032153/2022, NYSCEF No. 1.)

Corporations Law.  (FAC ¶ 62.)  Plaintiffs contend that these meeting minutes – which purport to be roughly twenty years old – appear to be in perfect condition and seemingly contain electronic signatures, which was not a common signature practice at the time.  (*Id.* ¶¶ 63-64.)[3]

Next, on April 29, 2022, an individual named "Morcha Beck" filed with the Rockland County Clerk a purportedly fraudulent Amended Certificate of Incorporation for ASD, (*see id.* ¶¶ 65, 67; ECF No. 32-3), signed by Beck, Rachel Klein and Elky Friedman, which stated that the individuals listed in the January 1, 2003 minutes, along with Schlesinger and Lipschitz, had been elected trustees of ASD at the January 1, 2003 meeting, (FAC ¶ 68.)[4]  It further purported that at a meeting on March 15, 2022, the same individuals, plus Naftali Beck and less Joshua Sternhell, were elected as ASD trustees.  (*Id.* ¶ 70.)  Plaintiffs allege that Schlesinger and Lipschitz did not attend either meeting, (*id.* ¶¶ 61, 71), and that the only remaining trustees of ASD after Schlesinger and Lipschitz resigned in December 2021 were Ostreicher, Chaim Stern, Ben Gross, and Malka Ostreicher, all of whom had been appointed by Schlesinger and Lipschitz before they resigned, (*id.* ¶ 72).  Thus, Plaintiffs allege that the amended certificate was signed by three alleged trustees (rather than the full seven necessary), none of whom had any authority to appoint

---

[3] The allegation that the signatures are electronic is apparently based on the fact that they "are perfectly aligned with the space provided, suggesting they were not natural signatures." (FAC ¶ 63.)  The Court is puzzled by this allegation, as typewritten documents customarily have signature lines that are aligned, and the signers typically sign on those lines.  Further, several signatures on the document extend beyond the lines to the left or right, or go well above or below the space allocated, even intruding into the neighboring signature box.  (ECF No. 32-2.)  The Court therefore does not see how, even if these individuals "all have signatures that are readily accessible electronically," "piecing them together on a document would not be difficult."  (FAC ¶ 64.)  But whether the signatures are genuine is not relevant to the outcome of the pending motions.

[4] Plaintiffs allege that it is unclear if Morcha Beck is an actual person or a moniker for Defendant Beck or one of his relatives.  (FAC ¶ 67.)

anyone as ASD's trustees.  (*Id.* ¶¶ 73, 82.)  Plaintiffs further point to inconsistencies within the certificate that they allege raise questions as to its authenticity.  (*See id.* ¶¶ 74-83.)

Third, Beck and Berger purportedly created an agreement dated March 13, 2002 that states that Beck bought half of ASD from Schlesinger and Lipschitz in 2002, with an option to purchase the other half within two years.  (*Id.* ¶ 84; *see* ECF No. 32-4.)  As with the amended certificate, Plaintiffs allege that there are several issues with the validity and authenticity of this document.  (*See* FAC ¶¶ 84-103.)  In addition, despite the purported existence of this agreement, Schlesinger and Lipschitz represented to Ostreicher that there were no prior agreements affecting the Property, (*id.* ¶ 104), and it was not produced when Ostreicher asked Berger to provide any documents supporting Beck's claim to ownership in the Property, (*id.* ¶ 105).

Finally, on or about July 13, 2022, on behalf of himself and ASD Inc., Schlesinger executed a satisfaction of mortgage on the Note – the same Note that he had sold to CPV in May 2022.  (*Id.* ¶ 107; *see id.* ¶ 39.)  Plaintiffs allege that Defendants have filed these fraudulent documents with the Rockland County Clerk and used them in the state court proceeding.  (*Id.* ¶¶ 107-108.)

### B.   <u>Procedural History</u>

Plaintiffs commenced this lawsuit on June 26, 2023, asserting federal claims against all Defendants for a substantive violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1962(c), and for RICO conspiracy under 18 U.S.C. § 1962(d), and state law claims for breach of contract and fraud against Schlesinger and Lipschitz.  (*See* ECF No. 1 ¶¶ 119-152.)  After Defendants filed pre-motion letters in anticipation of motions to dismiss, (ECF Nos. 22, 26), to which Plaintiffs responded, (ECF No. 29), I held a pre-motion conference at which I granted Plaintiffs leave to amend and set a briefing schedule

for the motions, (*see* Minute Entry dated Aug. 24, 2023).  The operative complaint – Plaintiffs'

FAC – was filed on September 26, 2023, (ECF No. 32), asserting the same four claims, (*see id.*

¶¶ 113-147).  The instant motions to dismiss and motions for sanctions, along with the

accompanying briefing, followed.

## II.   LEGAL STANDARD

### A.   Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[5]  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, . . . plaintiff[s'] obligation to provide the grounds of [their] entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do."  *Twombly*, 550 U.S. at 555.  While FRCP 8 "marks a notable and generous

departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the

doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at

678-79.

In considering whether a complaint states a claim upon which relief can be granted, the

court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth," and then determines whether the remaining well-pleaded

---

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679.

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to

relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

## III.    <u>DISCUSSION</u>

Plaintiffs allege that Defendants worked together in a scheme to give Beck control over

the Property despite such control rightfully belonging to Plaintiffs.  (*See generally* FAC; *see id.*

¶¶ 1-6.)  They assert that ASD is a RICO enterprise and that Defendants conducted the affairs of

that enterprise through a pattern of racketeering activity consisting of several alleged predicate

acts of wire fraud, thereby proximately injuring Plaintiffs in their business and property.  (*See id.*

¶¶ 114-128.)  Plaintiffs also allege that Defendants conspired to do so.  (*See id.* ¶¶ 130-134.)

Finally, Plaintiffs assert state law claims for breach of contract and fraud against Schlesinger and

Lipschitz.  (*See id.* ¶¶ 135-147.)  Beck and Berger argue that Plaintiffs' RICO claims should be

dismissed for failure to state a claim under FRCP 8(a) and FRCP 9(b).  (*See generally* ECF No.

43 ("B&B Mem.").)  Schlesinger and Lipschitz incorporate Beck's and Berger's arguments

regarding the RICO claims and raise additional arguments regarding pleading deficiencies of the

alleged predicate acts that specifically involve them.  (*See generally* ECF No. 40 ("S&L

Mem.").)

### A.    <u>Substantive RICO Claim</u>

The RICO statute makes it unlawful for "any person employed by or associated with any

enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to

conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  18 U.S.C. § 1962(c).  Title 18, United States Code, Section 1964(c) provides a civil remedy to "[a]ny person injured in his business or property by reason of a [RICO] violation . . . ."  Thus, to survive these motions to dismiss, Plaintiffs must plausibly allege:  (1) a violation of 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of § 1962.  *See Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018).  To establish a violation of § 1962, Plaintiffs must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *See id.*; *Dees v. Zurlo*, No. 24-CV-1, 2024 WL 1053237, at *5 (N.D.N.Y. Mar. 11, 2024); *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 123 (S.D.N.Y. 2023).  "The requirements of section 1962(c) must be established as to each individual defendant."  *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001); *see Bayshore Cap.*, 667 F. Supp. 3d at 123 (same).

Successful civil RICO claims permit recovery of "treble damages, attorney[s'] fees, and costs . . . ."  *MinedMap, Inc. v. Northway Mining, LLC*, No. 19-CV-501, 2021 WL 1926452, at *4 (N.D.N.Y. May 13, 2021) (collecting cases), *aff'd*, 2022 WL 570082 (2d Cir. Feb. 25, 2022) (summary order).  The statute's "exceptional treble damages remedy" reflects its "dual purpose . . .  [to] not only . . . compensate victims, but also to punish and deter criminal offenses," effectively "enlisting the civil litigation services of private attorneys general."  *Gross v. Waywell*, 628 F. Supp. 2d 475, 481 (S.D.N.Y. 2009).  Civil RICO is thus "an unusually potent weapon," and "the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants."  *Burgdorf v. Betsy Ross Nursing & Rehab. Ctr. Inc.*, No. 22-CV-987, 2023 WL 112092, at *3 (N.D.N.Y. Jan. 5, 2023), *report and recommendation adopted*, 2023 WL 418045 (N.D.N.Y. Jan. 26, 2023); *see MinedMap*, 2021 WL 1926452, at *4-5.

Additionally, the trinity of federal jurisdiction, treble damages and attorneys' fees "presents a powerful incentive for plaintiffs to attempt to fit garden variety fraud claims within the standard of civil RICO." *Rosenson v. Mordowitz*, No. 11-CV-6145, 2012 WL 3631308, at *4 (S.D.N.Y. Aug. 23, 2012); *see Munroe v. Fein, Such & Crane, LLP*, No. 22-CV-4052, 2023 WL 6308076, at *4 (E.D.N.Y. Sept. 27, 2023) ("[C]ourts routinely reject efforts to transform breach of contract claims into RICO actions."); *Negron v. Cigna Health & Life Ins. Co.*, 664 F. Supp. 3d 223, 233 (D. Conn. 2023) ("[C]ourts in the Second Circuit consistently warn against transforming actions stemming from alleged breaches of contract into federal RICO claims."); *Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 309 (S.D.N.Y. 2009) ("Civil RICO should not be used to transform a garden variety fraud or breach of contract case into a vehicle for treble damages.").

Thus, courts must "scrutinize civil RICO claims early in the litigation to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." *MinedMap*, 2021 WL 1926452, at *5; *see, e.g., Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014) ("RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."); *Helios Intern. S.A.R.L. v. Cantamessa USA, Inc.*, No. 12-CV-8205, 2013 WL 3943267, at *5 (S.D.N.Y. July 31, 2013) ("[C]ourts must be wary of putative civil RICO claims that are nothing more than sheep masquerading in wolves' clothing."); *Rosenson*, 2012 WL 3631308, at *5 (to same effect); *Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 167 (E.D.N.Y. 2010) (to same effect). Especially "in cases involving fraud, plaintiffs asserting RICO frequently miss the mark and have their cases dismissed at the outset." *Demaree v. Castro*, No.

22-CV-8772, 2023 WL 6465881, at *5 (S.D.N.Y. Oct. 4, 2023); *see Gross*, 628 F. Supp. 2d at 479-80 (discussing bleak success rates for civil RICO cases).

"An enterprise engages in a pattern of racketeering activity when its members commit at least two racketeering acts that both are related to one another and have a nexus to the enterprise (the so-called predicate acts)." *Bayshore Cap.*, 667 F. Supp. 3d at 124. Thus, to state a viable RICO claim under Section 1962(c), "plaintiff[s] must allege, among other things, two or more predicate acts constituting a pattern of racketeering activity." *Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020). The RICO statute contains an exhaustive list of predicate acts that may contribute to a pattern of racketeering activity, including 18 U.S.C. § 1343 – wire fraud. *See Dees*, 2024 WL 1053237, at *5; *Bayshore Cap.*, 667 F. Supp. 3d at 124.

Here, Plaintiffs allege several predicate acts of wire fraud. (FAC ¶¶ 117-126.)[6] "[W]ire fraud has three elements: (1) a scheme to defraud, (2) money or property that is the object of the scheme, and (3) use of the wires to further the scheme." *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018). The first element is assessed by a

_____

[6] While Plaintiffs include "obstruction of justice," 18 U.S.C. § 1503, as a predicate act in their opposition, (*see* ECF No. 46 ("Ps' Opp.") at 13 n.12), Plaintiffs did not allege this predicate in the FAC and thus I do not address it, *see Fitzsimons v. N.Y.C. Dist. Council of Carpenters*, No. 23-815, 2024 WL 221550, at *2 (2d Cir. Jan. 22, 2024) (summary order) ("Like the district court, we decline to consider the sufficiency of the charge form because the operative complaint makes no allegations regarding the charge form, and [plaintiff] raised this issue for the first time in his opposition to Defendants' motion to dismiss."); *Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 56 (2d Cir. 2018) ("Ordinarily, parties may not amend the pleadings through motion papers."); *Carter v. United States*, No. 22-CV-6715, 2024 WL 1345313, at *9 n.7 (E.D.N.Y. Mar. 29, 2024) ("Plaintiff does not make any such allegations in his pleadings and the Court declines to consider these factual allegations, which are raised for the first time in his briefing . . . ."), except to note that had Plaintiffs alleged such a predicate, it would have been frivolous, and sanctionable, because it is well settled that § 1503 only applies to obstruction in federal court, *see, e.g.*, *O'Malley v. N.Y.C. Transit Auth.*, 896 F.2d 704, 708 (2d Cir. 1990); *Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 02-CV-2561, 2003 WL 22227956, at *8-9 (S.D.N.Y. Sept. 26, 2003), and here any alleged obstruction would have been in state court.

nontechnical standard, measuring the alleged scheme's "reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society." *Id.* at 139; *Bayshore Cap.*, 667 F. Supp. 3d at 124; *see Entretelas Americanas S.A. v. Soler*, No. 19-CV-3658, 2020 WL 9815186, at *7 (S.D.N.Y. Feb. 3, 2020) (to same effect), *aff'd*, 840 F. App'x 601 (2d Cir. 2020) (summary order), *as amended* (Jan. 7, 2021).  The second element requires a showing that the object of the scheme – the property to be obtained – is "property in the hands of the victim." *Empire Merchs.*, 902 F.3d at 139; *Bayshore Cap.*, 667 F. Supp. 3d at 124.  Finally, the third element is met by any "wire that is part of the execution of the scheme to defraud as conceived by the perpetrator at the time." *Empire Merchs.*, 902 F.3d at 139; *Bayshore Cap.*, 667 F. Supp. 3d at 124.  While the wired communications need not be fraudulent to violate the statute, the communications must "be made in furtherance of the fraudulent scheme." *Bayshore Cap.*, 667 F. Supp. 3d at 125.

"[A]ll allegations of fraudulent predicate acts are subject to the heightened pleading requirement of Rule 9(b)." *Id.*; *see* Fed R. Civ. P. 9(b).  "To satisfy this requirement, a complaint must specify the time, place, speaker, and content of the alleged misrepresentations, explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *Bayshore Cap.*, 667 F. Supp. 3d at 125 (to same effect); *Estate of Izzo v. Vanguard Funding, LLC*, No. 15-CV-7084, 2017 WL 1194464, at *8 (E.D.N.Y. Mar. 30, 2017) (to same effect).  "Although Rule 9(b) permits knowledge to be averred generally, plaintiffs must still plead the events which they claim give rise to an inference of knowledge." *Devaney v. Chester*, 813 F.2d 566, 568 (2d Cir. 1987).  Put another way, plaintiffs "must plead the factual basis

which gives rise to a strong inference of fraudulent intent," *United States v. Strock*, 982 F.3d 51, 66 (2d Cir. 2020), and "[a]n inference is strong if it is cogent and at least as compelling as any opposing inference one could draw from the facts alleged," *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 176-77 (2d Cir. 2015).  Plaintiffs can establish this strong inference by alleging facts showing either that (1) defendants possessed both motive and opportunity to commit the fraud, or (2) there is "strong circumstantial evidence of conscious misbehavior or recklessness."  *Strock*, 982 F.3d at 66.

Defendants raise myriad arguments – several of them meritorious – as to why the predicate acts of wire fraud are inadequately pleaded or cannot otherwise serve as RICO predicates.  But I need not address the predicates one by one, because even if they were all properly pleaded, Plaintiff cannot surmount another RICO pleading requirement:  continuity.

The RICO statute requires more than merely engaging in racketeering activity; the defendant must have participated in a "pattern of racketeering activity."  18 U.S.C. § 1962(c); *see Bayshore Cap.*, 667 F. Supp. 3d at 134.  The statute defines a pattern to require at least two acts of racketeering activity within a ten-year period.  18 U.S.C. § 1961(5); *see Bayshore Cap.*, 667 F. Supp. 3d at 134.  Additionally, while two acts are a necessary minimum, plaintiffs must also plausibly allege "continuity" – *i.e.*, "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).  "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  *Id.* at 241.  Put another way, "a plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (*i.e.*, past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering

activity (*i.e.*, past criminal conduct extending over a substantial period of time)." *GICC Gap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995); *see MinedMap, Inc. v. Northway Mining, LLC*, No. 21-1480, 2022 WL 570082, at *1 (2d Cir. Feb. 25, 2022) (summary order) (to same effect). Thus, a RICO claim will fail unless the complaint plausibly alleges either that "Defendants engaged in repeated racketeering activity extending over a substantial period of time or . . . that they have engaged in racketeering activity that by its nature projects into the future with a threat of repetition." *Bayshore Cap.*, 667 F. Supp. 3d at 134. "Typically, courts in the Second Circuit have held that where the conduct at issue involves a limited number of perpetrators and victims and a limited goal, there will be no closed-ended or open-ended pattern." *JGIAP RH 160 LLC v. CRI Holding Corp.*, No. 21-CV-2489, 2023 WL 5979125, at *10 (E.D.N.Y. Aug. 16, 2023) (collecting cases), *report and recommendation adopted*, 2023 WL 6307320 (E.D.N.Y. Sept. 28, 2023).

Plaintiffs argue that they plausibly alleged both closed-ended and open-ended continuity. I disagree.

### 1.     Closed-Ended Continuity

To allege closed-ended continuity, the adequately pleaded predicate acts "must extend over a substantial period of time." *Bayshore Cap.*, 667 F. Supp. 3d at 134; *see Paul Hobbs Imports Inc. v. Verity Wines LLC*, No. 21-CV-10597, 2023 WL 374120, at *10 (S.D.N.Y. Jan. 24, 2023) (same). "Although factors such as the number and variety of predicate acts and the number of participants may be germane to this showing, closed-ended continuity is primarily a temporal concept." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008). While there is no bright-line rule defining a substantial period of time, "'predicate acts extending over a few weeks or months do not satisfy this requirement,'" *Bayshore Cap.*, 667 F.

Supp. 3d at 134 (quoting *H.J. Inc.*, 492 U.S. at 242); *see JGIAP RH 160*, 2023 WL 5979125, at

*11, and the Second Circuit generally requires that the predicate acts extend over at least two

years to be considered a closed-ended pattern, *see Bayshore Cap.*, 667 F. Supp. 3d at 135; *JGIAP

RH 160*, 2023 WL 5979125, at *11; *Paul Hobbs*, 2023 WL 374120, at *10.  Courts also consider

the "number and variety of predicate acts, the presence or absence of multiple schemes, and the

number of participants and victims."  *Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603,

605 (2d Cir. 2019) (summary order).  But the Second Circuit has stated that "it is 'rare' that

conduct lasting less than two years will qualify, especially when the activities alleged involve

only a handful of participants and do not involve a complex, multi-faceted conspiracy."  *One

World, LLC v. Onoufriadis*, No. 21-374, 2021 WL 4452070, at *2 (2d Cir. Sept. 29, 2021)

(summary order).  "In fact, the Second Circuit has never held a period of less than two years to

constitute closed-ended continuity."  *JGIAP RH 160*, 2023 WL 5979125, at *11.

Plaintiffs argue that the alleged period spans from December 2021, when they allege

Schlesinger and Lipschitz began "enveloping" Ostreicher in the scheme, through at least the

filing of the satisfaction of mortgage in July 2022, and that the period will continue for as long as

Defendants continue to improperly control ASD, which they predict will be "well beyond two

years."  (Ps' Opp. at 21.)  But "[t]he relevant period . . . is the time during which RICO predicate

activity occurred, not the time during which the underlying scheme operated or the underlying

dispute took place."  *Spool*, 520 F.3d at 184; *see Cofacredit, S.A. v. Windsor Plumbing Supply

Co., Inc.*, 187 F.3d 229, 243 (2d Cir. 1999) ("[T]he duration of a pattern of racketeering activity

is measured by the RICO predicate acts the defendants commit.").  The predicate acts alleged by

Plaintiffs span from May 5, 2022 to July 13, 2022.  (FAC ¶¶ 39-43, 107, 117-126.)  "Clearly that

[less than] three-month period does not satisfy the continuity requirement."  *Ozbakir v. Scotti*,

764 F. Supp. 2d 556, 569 (W.D.N.Y. 2011); *see Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929

F. Supp. 117, 126 (S.D.N.Y. 1996) ("Three months is not a 'substantial period of time.'")

(quoting *H.J., Inc.,* 492 U.S. at 242).

Plaintiffs' argument that "Defendants' continued improper use of ASD as their own

entity," (Ps' Opp. at 21), is insufficient because that use is not pleaded as a predicate act or

alleged to have been accomplished by means of wire fraud or any other predicate offense.

Further, closed-ended continuity must be determined based on a "finite, pre-litigation period of

repeated conduct over a time period of substantial duration," *Karupaiyan v. CVS Health Corp.*,

No. 19-CV-8814, 2021 WL 4341132, at *35 (S.D.N.Y. Sept. 23, 2021); *see Allstate Ins. Co. v.

Avetisyan*, No. 17-CV-4275, 2021 WL 1227625, at *3 (E.D.N.Y. Mar. 5, 2021), *report and

recommendation adopted*, 2021 WL 1224101 (E.D.N.Y. Mar. 31, 2021) – that is, conduct

preceding the filing of the RICO lawsuit.  One cannot extend the period of closed-ended

continuity through non-pleaded post-litigation conduct.

Moreover, the only such "use" of ASD alleged in the FAC is the ongoing litigation in

state court.  But litigation activity cannot support a RICO predicate.  "[A]llegations of frivolous,

fraudulent, or baseless litigation activities – without more – cannot constitute a RICO predicate

act."  *Kim*, 884 F.3d at 104; *see Butcher*, 975 F.3d at 241 (same).[7]  For litigation activities to be

considered RICO predicates under *Kim*, courts generally require a plaintiff to allege more than

---

[7] This principle is based on the concern that permitting litigation activities to serve as predicate acts for RICO claims could regularly "spawn a retaliatory action" for unsuccessful lawsuits, "inundate the federal courts with procedurally complex RICO pleadings," and "erode the principles undergirding the doctrines of *res judicata* and collateral estoppel, as such claims frequently call into question the validity of documents presented in the underlying litigation as well as the judicial decisions that relied upon them."  *Kim*, 884 F.3d at 104; *see Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 70 (E.D.N.Y. 2020).  This concern is magnified when the lawsuit where most of the activity has taken place remains pending, *see Estate of Izzo*, 2017 WL 1194464, at *11; *Curtis & Assocs.*, 758 F. Supp. 2d at 173-74, as is the case here.

the ordinarily legitimate act of filing a lawsuit.  *See Black v. Ganieva*, 619 F. Supp. 3d 309, 342-43 (S.D.N.Y. 2022), *aff'd*, 2023 WL 2317173 (2d Cir. Mar. 2, 2023) (summary order).  "Rather, a complaint must allege more concerted abuse of the legal system.  Accordingly, where a complaint's allegations about litigation activity boil down to the fact of the lawsuit itself, such cannot constitute a RICO predicate act."  *Id.* at 342.  Because predicates arising from abusive litigation tactics must allege something beyond conduct intrinsic to the litigation process, they are rarely successfully pleaded, *see Black*, 619 F. Supp. 3d at 343, and the few that pass muster involve much more than using a single litigation to carry out an alleged fraudulent scheme, *see Kim*, 884 F.3d at 105.  Plaintiffs contend that the conduct here is "inherently corrupt" and "is exactly the type of conduct that the Second Circuit in *Kim* indicated remains open to liability under RICO."  (*See* Ps' Opp. at 16.)  But, to the contrary, Plaintiffs here allege exactly the type of conduct that *Kim* carves out of RICO.  *See Kim*, 884 F.3d at 103-05; *see also Weaver v. Boriskin*, 751 F. App'x 96, 98 (2d Cir. 2018) (summary order) (allegations that defendants "create[ed] and record[ed] a fraudulent assignment to show . . . standing to foreclose on [plaintiff's] property" and filed a summary judgment motion in the foreclosure action were not sufficient RICO predicates); *Black*, 619 F. Supp. 3d at 342-43 (even frivolous and sanctionable lawsuit is not "remove[d] . . . from the *Kim* bar" where based on conduct "intrinsic to the litigation itself," not "collateral conduct abusive of the litigation process"); *Lewis v. Legal Servicing LLC*, No. 19-CV-8085, 2022 WL 2531817, at *14 (S.D.N.Y. Mar. 15, 2022) ("Plaintiff's allegations . . . center on litigation-related conduct, which cannot amount to RICO predicate acts."), *report and recommendation adopted sub nom. Lewis v. Steward*, 2022 WL 4592641 (S.D.N.Y. Sept. 30, 2022).

Mere conclusory allegations that the state lawsuit is "inherently corrupt," (Ps' Opp. at

16), and an "abuse of the legal system," (*id.* at 18), do not transform the alleged litigation activity

into a RICO predicate:  Plaintiffs must allege wrongdoing beyond the underlying litigation itself,

*see Kim*, 884 F.3d at 105 (distinguishing *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d

413, 418-20 (S.D.N.Y. 2010), because the defendants in that case "engaged in a variety of other

out-of-court actions to further" the alleged fraudulent scheme); *Wang v. Yien-Koo King*, No. 18-

CV-8948, 2019 WL 1763230, at *7 (S.D.N.Y. April 22, 2019) ("Plaintiffs have not alleged

enough corrupt conduct in connection with the [underlying] action, such as bribery of witnesses

or parties, sufficient to hold that the filing of a fraudulent complaint in [and] of itself can

constitute criminal mail or wire fraud."); *see also Butcher*, 975 F.3d at 241 (allegations that

defendants made false statements in court filings and while testifying in court-related

proceedings did not support substantive RICO claim); *Black*, 619 F. Supp. 3d at 343 ("The

FAC's rhetorical claims to the effect that [Defendants'] lawsuit abused the judicial system do not

embed facts to this effect within the meaning of the *Kim* line of authority."); *Acres Bonusing,*

*Inc. v. Ramsey*, No. 19-CV-5418, 2022 WL 17170856, at *11 (N.D. Cal. Nov. 22, 2022) ("In the

wake of *Kim*, district courts from around the country have found that litigation activities will not

serve as predicate acts unless there are allegations of wrongdoing outside of the litigation, such

as out-of-court activity or corruption.").  Apart from the filing of allegedly false documents in

the office of the Rockland County Clerk for use in the state lawsuit, Plaintiffs point to nothing

else for which Defendants have used these documents, and *Kim* and its progeny have established

that this activity alone is not enough to be a viable RICO predicate.  *See, e.g.*, *Black*, 619 F.

Supp. 3d at 342-43; *Rajaratnam*, 449 F. Supp. 3d at 69-70; *see also Carroll v. U.S. Equities*

*Corp.*, No. 18-CV-667, 2019 WL 4643786, at *12 (N.D.N.Y. Sept. 24, 2019) (collecting cases

showing that "the overwhelming weight of authority bars a civil RICO claim based on the use of the mail or wire to conduct allegedly fraudulent litigation activities").[8]  Plaintiffs have not shown the "more" that *Kim* and its progeny require to permit litigation activities to serve as predicate acts for a RICO claim.

But even if Plaintiffs established predicate acts that lasted more than two years, which they have not, Plaintiffs would still fail to allege closed-ended continuity.  "The mere fact . . . that predicate acts span two-years is insufficient, without more, to establish a pattern of racketeering activity." *Equinox Gallery Ltd. v. Dorfman*, 306 F. Supp. 3d 560, 571-72 (S.D.N.Y. 2018).  "Other factors, such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists." *Id.*  Here, at most, Plaintiffs allege a single scheme among four defendants to deprive them of a single property through similar predicate acts of wire fraud.  This is not enough to establish closed-ended continuity.  *See Grace Int'l*, 797 F. App'x at 605-606 (twenty-nine month long scheme involving few victims and few perpetrators, with limited goal of defrauding the plaintiff, did not support finding of closed-ended continuity); *Pier Connection, Inc. v. Lakhani*, 907 F. Supp. 72, 78 (S.D.N.Y. 1995) (one scheme with single goal of seizing control of plaintiff's business, even though using several different tactics, did not support finding of closed-ended continuity); *see also One World LLC*, 2021 WL 4452070, at *2 (alleged scheme involving discrete number of predicate acts and single victim did not justify departing from two-year benchmark for closed-ended continuity).  Rather, the alleged scheme is "more akin to garden variety breach of contract and tort claims than a large-scale civil RICO

---

[8] The cases on which Plaintiffs rely, (*see* Ps' Opp. at 15-18), are inapposite.  They either pre-date *Kim* or are out-of-Circuit, and, to the extent they address whether litigation activities could serve as predicate acts, involve conduct extending well beyond a single fraudulent lawsuit.

claim," which does not suffice for closed-end continuity.  *MinedMap, Inc.*, 2022 WL 570082, at

*2; *see Bayshore Cap.*, 667 F. Supp. 3d at 135-36 (collecting cases).

### 2.    Open-Ended Continuity

"To satisfy open-ended continuity, the plaintiff[s] need not show that the predicates

extended over a substantial period of time but must show that there was a threat of continuing

criminal activity beyond the period during which the predicate acts were performed."

*Cofacredit, S.A.*, 187 F.3d at 242; *see Bayshore Cap.*, 667 F. Supp. 3d at 136 (same).

> There are two ways to show open-ended continuity – (1) where the acts of the
> defendant or the enterprise are inherently unlawful, such as murder or obstruction
> of justice, and are in pursuit of inherently unlawful goals, such as narcotics
> trafficking or embezzlement, or (2) where the enterprise primarily conducts a
> legitimate business but there is some evidence from which it may be inferred that
> the predicate acts were the regular way of operating that business, or that the
> nature of the predicate acts themselves implies a threat of continued criminal
> activity.

*Grace Int'l*, 797 F. App'x at 606; *see H.J. Inc.*, 492 U.S. at 241-43; *Bayshore Cap.*, 667 F. Supp.

3d at 136.  Open-ended continuity may only be evaluated based on the predicate acts that

Plaintiffs adequately plead in the complaint.  *See Bayshore Cap.*, 667 F. Supp. 3d at 136; *Paul

Hobbs*, 2023 WL 374120, at *11.

Here, the alleged scheme to defraud Plaintiffs of control of the Property and of the money

associated with their purchase is not an inherently unlawful activity that could serve to plausibly

show open-ended continuity.  "It is well established law that fraud does not fall within the

'inherently unlawful' category of predicate acts so as to imply a threat of continued criminal

activity." *Bayshore Cap.*, 667 F. Supp. 3d at 136 (collecting cases); *see Paul Hobbs*, 2023 WL

374120, at *12 ("[I]n cases concerning alleged racketeering activity in furtherance of endeavors

that are not inherently unlawful, such as frauds in the sale of property, the courts generally have

found no threat of continuing criminal activity arising from conduct that extended over even

longer periods."); *CrossBorder Sols., Inc. v. Macias, Gini, & O'Connell, LLP*, No. 20-CV-4877,

2022 WL 562934, at *9 (S.D.N.Y. Feb. 23, 2022) (to same effect); *Westchester Cnty. Indep.*

*Party v. Astorino*, 137 F. Supp. 3d 586, 611 (S.D.N.Y. 2015) (fraud not "inherently unlawful" in

the RICO continuity context) (collecting cases).[9]

Nor have Plaintiffs alleged that the wire fraud predicate acts were "the regular way" that

ASD operated, *see Bayshore Cap.*, 667 F. Supp. 3d at 137, identified anything about those

predicate acts that implies a threat of continuing criminal activity, or pointed to "[o]ther kinds of

external facts . . . [that] provide evidence of the requisite threat of continuity," *U.S. v. Kaplan,*

886 F.2d 536, 542-43 (2d Cir. 1989); *see Bayshore Cap.*, 667 F. Supp. 3d at 137 (plaintiff failed

to plead that acts of wire fraud were regular way defendants operated business, where no acts of

wire fraud pleaded other than predicates); *Pier Connection*, 907 F. Supp. at 77 (claim of open-

ended continuity fails where facts showed only single fraudulent scheme, because inferring

"threat of repeated fraud from a single alleged scheme would in effect render the pattern

requirement meaningless"); *Polycast Tech. Corp. v. Uniroyal, Inc.*, 792 F. Supp. 244, 264

(S.D.N.Y. 1992) (no open-ended continuity because company's alleged fraudulent sale of

subsidiary "was a one-shot, non-recurring deal").

---

[9] Plaintiffs' citation to *United States v. Aulicino*, 44 F.3d 1102 (2d Cir. 1995), (*see* Ps' Opp. at 19), is unavailing.  They cite that case for the proposition that "it is 'inherently unlawful' to create fraudulent corporate documents and rely on them to seize control of a corporation." (*Id*.)  Had their cite to *Aulicino* not been prefaced by a "see" signal, and had it been placed right after the phrase "inherently unlawful," the citation would mean only that that phrase comes from that case.  But by using "see" and placing the citation after the full sentence, Plaintiffs were suggesting that *Aulicino* supports the premise that creating fake documents to obtain property is inherently unlawful – which, if anything, is the opposite of what that case says.  In discussing "inherently unlawful" activities such as murder and obstruction, in pursuit of "inherently unlawful" goals such as narcotics trafficking or embezzlement, *Aulicino* specifically contrasted "frauds in the sale of property," which it described as activity that is "not inherently unlawful" and that courts find does not pose a threat of continuing criminal activity.  44 F.3d at 1111.

To the contrary, an alleged scheme that is inherently terminable – such as a scheme to wrest control of ASD and the Property from Plaintiffs – cannot support an implication of continued racketeering activity. *See MinedMap, Inc.*, 2022 WL 570082, at *2 ("Even if we assume that defendants' scheme was designed to deprive [Plaintiffs] of [their property], it is clear that the scheme was *inherently* terminable. It defies logic to suggest that a threat of continued looting activity exists when there is nothing left to loot.") (emphasis in original); *One World, LLC*, 2021 WL 4452070, at *3 (alleged scheme "would have terminated once [plaintiff's] funds were depleted" and was therefore inherently terminable). Nothing in the FAC suggests that Defendants were likely to continue racketeering activity, as "the alleged wrongdoings were directed at a single victim . . . and had a single purpose" – to take ASD and the Property from Ostreicher. *See CrossBorder*, 2022 WL 562934, at *9. Put another way, Plaintiffs alleged a single scheme, with a single victim, and a terminable end date: nothing in Plaintiffs' allegations suggests that the alleged fraudulent activities would continue after Defendants secured control over ASD and the Property. *See Grace Int'l*, 797 F. App'x at 606.

As with closed-ended continuity, Plaintiffs' allegation that "defendants are causing ASD to bring a lawsuit that they continue to prosecute," (Ps' Opp at 19), does not aid them, *see Black*, 619 F. Supp. 3d at 346 (no open-ended continuity where scheme targets one victim "and is inherently terminable (as is the case with [defendant's] lawsuit and alleged smear campaign)"); *B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 171 (S.D.N.Y. 1995) (no open-ended continuity where no allegation that "coercive litigation is a regular aspect of Defendants' business, or that there is a likelihood of repetition of these alleged predicate acts").[10]

---

[10] Plaintiffs' reliance on *United States v. Kaplan*, 886 F.2d 536 (2d Cir. 1989), (*see* Ps' Opp. at 19), is misplaced. The Circuit there considered defendant's "willingness to facilitate

Thus, Plaintiffs have not alleged continuity, and their substantive RICO claim must be dismissed.[11]

## B.   **RICO Conspiracy Claim**

Plaintiffs also assert against all Defendants a claim for RICO conspiracy pursuant to 18 U.S.C § 1962(d).  (FAC ¶¶ 130-134.)

> To establish a conspiracy to violate the civil RICO statute pursuant to 18 U.S.C. § 1962(d) plaintiff[s] must prove (1) that there existed a conspiracy to commit acts that, if successful, would constitute a substantive civil RICO violation; (2) that defendant agreed to join in, and knowingly participated in, that conspiracy; and (3) that defendant acted in furtherance of the conspiracy in some manner (although not necessarily by the commission of any RICO predicate acts himself).

*Bayshore Cap.*, 667 F. Supp. 3d at 137.

"A conspiracy claim cannot survive if the agreement at issue concerns actions which, by themselves would not constitute a RICO violation."  *China Tr. Bank of N.Y. v. Standard Chartered Bank, PLC*, 981 F. Supp. 282, 288 (S.D.N.Y. 1997).  "To withstand a motion to dismiss, a RICO conspiracy allegation must display the continuity necessary to support a substantive RICO violation, or an agreement to perform other predicate acts that, if carried out, would have established the requisite pattern of racketeering activity."  *Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Invs. Ltd.*, 154 F. Supp. 2d 682, 695 (S.D.N.Y. 2001).  Plaintiffs have

---

corruption generally," which "demonstrate[d] [his] continuing intent and ability to participate in various ways in the corruption of the enterprise," in deciding whether the government provided sufficient evidence of continuity for a RICO conviction.  *Id.* at 542-43.  But it was evaluating a defendant who, despite being charged with only two predicate acts of bribery, had engaged in multiple corrupt schemes involving the enterprise, and the Court found that the other schemes sufficed to show that the charged predicates were not "sporadic or isolated acts" and therefore there was a threat of continuity.  *Id.* at 543.  *Kaplan* was nothing like this case and does not begin to suggest that the prosecution of a single fraudulent lawsuit, against a single victim with a single goal, shows a threat of continuity.

[11] Having found that Plaintiffs have failed to allege a substantive violation of 18 U.S.C. § 1962, I need not address Defendants' arguments regarding injury and proximate causation.

alleged no facts plausibly suggesting an agreement to commit additional predicates that would satisfy the continuity requirement, and accordingly their RICO conspiracy claim fails.  *See Cofacredit, S.A.*, 187 F.3d at 245 (conspiracy claim fails where predicate acts do not show continuity required for substantive RICO violation, and there is no evidence that defendants agreed to perform additional predicate acts that, if committed, would have displayed continuity sufficient to establish a pattern of racketeering activity); *see also First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004) (where substantive RICO claim dismissed for lack of continuity, corresponding RICO conspiracy claim properly dismissed as well); *Black*, 619 F. Supp. 3d at 348 ("Here, substantially for the compounding reasons that the FAC fails to plead a substantive RICO violation, it fails to plead a RICO conspiracy."); *Bayshore Cap.*, 667 F. Supp. 3d at 137 (collecting cases).   The RICO conspiracy claim is therefore dismissed.

### C.   <u>State Law Claims</u>

"[T]he traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction over any remaining state-law claims where all federal-law claims are eliminated before trial.  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see Grace Int'l Assembly of God v. Festa*, No. 17-CV-7090, 2019 WL 1369000, at *9 (E.D.N.Y. Mar. 26, 2019) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."), *aff'd*, 797 F. App'x 603 (2d Cir. 2019) (summary order).  Having determined that the only claims over which this Court has original jurisdiction should be dismissed, and having considered the factors

set forth in *Cohill*, I decline to exercise supplemental jurisdiction over Plaintiffs' claims for breach of contract and fraud, which are dismissed without prejudice.

### D.   <u>Leave to Amend</u>

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim*, 884 F.3d at 105.  "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, Plaintiffs have already amended, after having the benefit of Defendants' pre-motion letters outlining the grounds for their motions to dismiss, (*see* ECF Nos. 22, 26), and the benefit of the discussion at the pre-motion conference, (*see* Minute Entry dated Aug. 24, 2023). Generally, the failure to fix deficiencies in an initial pleading, after being provided notice of those deficiencies, is alone sufficient ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*."); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and

26

"plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.").

Further, Plaintiffs have not asked to amend or otherwise suggested that they are in possession of facts that would cure the deficiencies identified in this opinion.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiffs need not be given leave to amend if plaintiffs fail to specify how amendment would cure pleading deficiencies in complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend).

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## IV.    <u>MOTIONS FOR SANCTIONS</u>

Defendants move for sanctions pursuant to FRCP 11, 28 U.S.C. § 1927, and the Court's inherent power, seeking an order requiring Plaintiffs and Plaintiffs' counsel to pay for Defendants' attorneys' fees and expenses in connection with this lawsuit and subjecting Plaintiffs to other reasonable sanctions.  (*See* ECF Nos. 50, 54.)[12]

---

[12] In their motion for sanctions, Defendants Schlesinger and Lipschitz join and incorporate by reference the memorandum of law submitted by Defendants Beck and Berger. (*See* ECF No. 54.)

A.    <u>**FRCP 11**</u>

Federal Rule of Civil Procedure 11(c) permits a court to impose appropriate sanctions on

"any attorney, law firm, or party that violated [Rule 11(b)] or is responsible for the violation."

Fed. R. Civ. P. 11(c)(1).  Rule 11(b) states:

> By presenting to the court a pleading, written motion, or other paper – whether by
> signing, filing, submitting, or later advocating it – an attorney or unrepresented
> party certifies that to the best of the person's knowledge, information, and belief,
> formed after an inquiry reasonable under the circumstances:
>
> > (1)  it is not being presented for any improper purpose, such as to harass,
> > cause unnecessary delay, or needlessly increase the cost of litigation;
>
> > (2)  the claims, defenses, and other legal contentions are warranted by
> > existing law or by a nonfrivolous argument for extending, modifying,
> > or reversing existing law or for establishing new law;
>
> > (3)  the factual contentions have evidentiary support or, if specifically so
> > identified, will likely have evidentiary support after a reasonable
> > opportunity for further investigation or discovery; and
>
> > (4)  the denials of factual contentions are warranted on the evidence or, if
> > specifically so identified, are reasonably based on belief or a lack of
> > information.

Fed. R. Civ. P. 11(b).  Rule 11(c) permits a court to award reasonable expenses, including

attorneys' fees, to the party that prevails on a motion for sanctions.  *See JGIAP RH 160*, 2023

WL 5979125, at *18 (citing Fed. R. Civ. P. 11(c)(2)).

Defendants argue that the FAC is frivolous because it could not have succeeded under

RICO precedent, nor could Plaintiffs argue for a reasonable modification or extension of that

precedent.  (*See* ECF No. 51 at 4-6.)  They contend that because Plaintiffs' RICO claims "wholly

lack any conceivable legal or factual merit," (*id.* at 9), Plaintiffs should at least pay the attorneys'

fees and associated expenses that Defendants incurred in addressing the frivolous claims that

Plaintiffs vexatiously raised, (*id.* at 5, 10).  Plaintiffs argue that the FAC is properly pleaded and

not frivolous, (*see* ECF No. 55 at 8-14), no other factors support imposing sanctions and there is

no basis to find that they acted in bad faith, (*see id.* at 14-17).[13]

I construe Defendants' arguments as contending that Plaintiffs claims violated Rule

11(b)(2) and (3).  "When a party's legal contentions are challenged as violating Rule 11, the

operative question is whether the argument is frivolous, *i.e.*, the legal position has no chance of

success, and there is no reasonable argument to extend, modify, or reverse the law as it stands."

*Black v. Ganieva*, No. 21-CV-8824, 2022 WL 2354916, at \*13 (S.D.N.Y. June 30, 2022); *see*

*Weiss v. David Benrimon Fine Art LLC*, No. 20-3842, 2021 WL 6128437, at \*2 (2d Cir. Dec. 28,

2021) (summary order) ("To constitute a frivolous legal position for purposes of Rule 11

sanction, it must be clear under existing precedents that there is no chance of success and no

reasonable argument to extend the law as it stands.").  "The inquiry is one of objective

unreasonableness and is not based on the subjective beliefs of the person making the statement."

*Weiss*, 2021 WL 6128437, at \*2.  "[T]he Second Circuit has counseled that a distinction must be

drawn between a position which is merely losing and one which is both losing and sanctionable."

*Black*, 2022 WL 2354916, at \*13.  "But the point at which an argument turns from merely losing

---

[13] Plaintiff also allege that Defendants Schlesinger and Lipschitz did not follow the
requirements for FRCP 11(c)(2)'s safe harbor provision.  (*See* ECF No. 55 at 17.)  Plaintiffs are
incorrect.  Rule 11(c)(2) includes a "safe harbor" provision that provides the attorney or party 21
days "to modify or withdraw the challenged submission to avoid sanctions."  *JGIAP RH 160*,
2023 WL 5979125, at \*18; *see* Fed. R. Civ. P. 11(c)(2) (Rule 11 motion must be served but
"must not be filed or be presented to the court if the challenged paper, claim, defense, contention,
or denial is withdrawn or appropriately corrected within 21 days after service or within another
time the court sets.").  Schlesinger's and Lipschitz's counsel emailed their notice of motion for
sanctions (which incorporated Beck's and Berger's brief and declaration) to Plaintiffs on
September 26, 2023.  (*See* ECF Nos. 54, 58, 58-1.)  This is sufficient to satisfy the procedural
requirements of FRCP 11(c)(2)'s safe harbor.  *See Star Mark Mgmt., Inc. v. Koon Chun Hing
Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175-76 (2d Cir. 2012) (*per curiam*) (sending a
letter with notice of motion attached met procedural requirements of safe harbor because FRCP
11(c)(2) does not require service of a memorandum of law or other supporting documents).

to losing *and* sanctionable is often difficult to discern." *Id.* (emphasis original); *see Weiss*, 2021 WL 6128437, at *2 ("The fact that a legal theory is a long-shot does not necessarily mean it is sanctionable."). The decision to impose sanctions for a Rule 11 violation is within the Court's discretion. *See JGIAP RH 160*, 2023 WL 5979125, at *19 (imposition of sanctions "reserved only for extreme cases").

Plaintiffs' RICO claims are without merit, but I do not consider them to be so frivolous as to warrant sanctions. Some of the predicate acts would not suffice because *Kim* concluded that abusive litigation activity from a single lawsuit cannot support a RICO claim, but *Kim* did not close the door entirely, leaving room for situations where the conduct extended beyond the lawsuit. *See* 884 F.3d at 104-05; *see also Black*, 2022 WL 2354916, at *17 (Second Circuit in *Kim* "declined to reach the issue of whether all RICO actions based on litigation activity are categorically meritless"). Further, while some predicates were inadequately particularized or failed to specify a wiring, had they been better pleaded they could have served as RICO predicates. Likewise, although Plaintiffs' allegations fell far short of showing the continuity required for a pattern of racketeering activity, that is a complex issue and Plaintiffs' arguments are not so without foundation as to rise to a sanctionable level. *See generally Kim*, 884 F.3d at 106 ("[A]lthough Kim's amended complaint ultimately failed to state a RICO claim, his claims were not so obviously foreclosed by precedent as to make them legally indefensible."); *JGIAP RH 160,* 2023 WL 5979125, at *22 ("The Court does not find that plaintiff's RICO claims were so objectively unreasonable as to warrant the imposition of sanctions.") (collecting cases); *Black*, 2022 WL 2354916, at *1 (pleading containing "threadbare factual support and numerous apparent pleading deficiencies" did not warrant FRCP 11 sanctions); *see also id.* at *19 ("Accordingly, [the complaint's] allegations of open-ended continuity, even if insufficient to

state a claim, are not frivolous."); *Weiss,* 2021 WL 6128437, at *3 ("However faulty, [plaintiff's] positions were not so untenable as a matter of law as to necessitate sanction.").

Thus, I deny Defendants' motions for sanctions pursuant to FRCP 11(c).

### B.      28 U.S.C. § 1927

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  "To award attorney's fees against an attorney under § 1927, 'a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is, motivated by improper purposes such as harassment or delay.'"  *Reply All Corp. v. Gimlet Media, Inc.*, No. 15-CV-4950, 2021 WL 1291103, at *4 (E.D.N.Y. Apr. 5, 2021) (quoting *Kim*, 884 F.3d at 106).  "A court may infer bad faith when a party undertakes frivolous actions that are completely without merit."  *Id.*

Defendants argue that sanctions are warranted under 28 U.S.C. § 1927 because the FAC is devoid of merit and Plaintiffs "unreasonably and vexatiously prosecuted the instant civil RICO action."  (ECF No. 51 at 12.)  But they raise this argument only in a cursory manner, "without advancing any substantive arguments to support their claim[s]."  *Kim*, 884 F.3d at 107 (treating defendants' argument as waived where they did not include contentions, rationales, citations to authorities, and citations to the record).  Defendants' discussion of 28 U.S.C. § 1927 consists only of boilerplate regarding the general application of the statute.  (*See* ECF No. 51 at 12.) They do not develop an argument that Plaintiffs' counsel acted in subjective bad faith, include their rationales, or cite to the record.  Thus, I consider this argument waived.

Defendants do point out, in the fact section of their brief, that Plaintiffs' counsel submitted a FAC that contained many of the same deficiencies that Defendants had pointed out in their pre-motion letters, (*see id.* at 2-3), which arguably suggests that Plaintiffs' counsel should have understood that the RICO claims were not viable.  But the FAC's failure to cure the problems with the original complaint could just as easily been attributable to poor judgment or unwarranted optimism.  Defendants may have shown that Plaintiffs' counsel should have known better, but they have not met their burden to show that he did know better and proceeded anyway.  *See Jimenez v. Senior Exch., Inc.*, No. 23-CV-323, 2024 WL 1833808, at *7 (S.D.N.Y. Apr. 26, 2024) (movants must "demonstrate clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes"); *Dwelling Mgmt., Inc. v. Mission 8, LLC*, No. 23-CV-2593, 2023 WL 8307986, at *2 (S.D.N.Y. Dec. 1, 2023) (movants "failed to establish that sanctions [under 28 U.S.C. § 1927 or the Court's inherent power were] warranted"); *GateGuard, Inc. v. Goldmont Realty Corp.*, 641 F. Supp. 3d 66, 75 n.3 (S.D.N.Y. 2022) ("[Defendants] have not attempted to explain why they meet the much higher burden required to obtain sanctions under 28 U.S.C. § 1927.").[14]

I therefore deny the motion for sanctions under § 1927.

---

[14] "In practice, the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 144 (2d Cir. 2012).  Both require a showing of bad faith.  *Id.* Having found that Defendants have not shown bad faith on counsel's part, I likewise find no basis to find it on the client's part.  The record reveals no reason to think the client would have a better understanding of RICO than counsel.  I thus decline to impose sanctions under my inherent authority.

## V.   <u>CONCLUSION</u>

For the reasons stated above, Defendants' motions to dismiss are GRANTED and

Defendants' motions for sanctions are DENIED.  Plaintiffs' federal RICO claims are dismissed

with prejudice.  Plaintiffs' state law breach of contract and fraud claims are dismissed without

prejudice.  The Clerk of Court is respectfully directed to terminate the pending motions, (ECF

Nos. 35, 39, 41, 50, 54), and close the case.

**SO ORDERED.**

Dated: May 29, 2024
        White Plains, New York

_____
        CATHY SEIBEL, U.S.D.J.